UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20557-Civ-SEITZ
MAGISTRATE JUDGE P.A. WHITE

JAMES C. MARSHALL,                  :

    Petitioner,               :

v.                                  :        <u>REPORT OF</u>
                                    :        <u>MAGISTRATE JUDGE</u>
KENNETH S. TUCKER,                  :

    Respondent.               :
_____    :

## I. <u>Introduction</u>

James C. Marshall, a state prisoner confined at Okeechobee Correctional Institution, filed this <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking the lawfulness of his conviction and sentence entered in Case No. 04-10361 in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami-Dade County.

The case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition (DE# 1), the Court has the petitioner's response to an order regarding the limitations period (DE# 9), the respondent's response to the order to show cause with supporting Appendix and State Court Record (DE# 14, 15, 16),[1] and the petitioner's reply with supporting appendix of exhibits (DE# 20).

_____

[1] The respondent submitted copies of relevant state court records in an supporting Appendix (DE# 15-1) as well as the Record on Appeal in the direct appeal proceeding, which includes states court records as well as transcripts of the trial and sentencing. (DE# 16-1 - 16-6).

## II. <u>Claims</u>

Marshall raises the following grounds for relief:

1.  The evidence admitted at trial was insufficient to sustain his conviction.

2.  The trial court erred when it failed to conduct a proper *Faretta*[2] hearing after he filed a <u>pro</u> <u>se</u> motion to dismiss trial counsel on the basis of ineffectiveness.

3.  He was improperly denied a mental health expert to assess his mental competency at the time of the offense.

4.  The trial court improperly sentenced him without first requiring a proper and complete presentence investigation report and, instead, based the habitual offender sentence on erroneous statements made by the prosecutor.

5.  He received ineffective assistance of trial counsel, because his lawyer failed to lodge a contemporaneous objection to the flawed jury instruction as to the lesser included offense of manslaughter.

6.  He received ineffective assistance of trial counsel, because his lawyer failed to investigate and present the defense of insanity based upon his long term use of mind altering drugs.

7.  He received ineffective assistance of appellate counsel, because his lawyer failed to raise as an issue on direct appeal that the jury instruction was fundamentally flawed for the reasons stated in <u>Montgomery v. State</u>, 70 So.3d 603 (Fla. 1st DCA 2009).

## III. <u>Facts of the Offense</u>[3]

The victim, Marie Sanders shared her house with her daughter, Jowanna Washington; her friend, Daisy Hicks; her brother, Clarence Sanders; her granddaughter, Shemeria Brown; and six children. <u>See</u>

---

[2] <u>Faretta v. California</u>, 422 U.S. 806, 819-20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975).

[3] The facts of the offense have been obtained from the evidence admitted at trial. <u>See</u> Trial Transcript. (DE# 16-2 - 16-5).

Trial Transcript at 237-39. (DE# 16-5). Marshall was Jowanna's boyfriend. Id. at 241. On April 1, 2004, Marshall arrived at the residence at approximately 11:00 P.M., as a guest of Jowanna. Id. at 241. Marie went to bed sometime between 10:00 and 11:00 P.M. and, because of her medical condition,[4] Hicks was sleeping in the same bed with her. Id. at 238, 241, 277. Hicks was first awakened by the sounds of someone hollering and then she saw Marshall kick the door in, jump on top of Marie and try to strangle her. Id. at 243-44, 258. When Hicks could not stop Marshall from choking Marie, she exited the room to get help. Id. at 244-45. Brown was awakened by the screams from Marie for help. Id. at 257-59. Brown observed Marshall with his hands around Marie's neck and she telephoned the police. Id. at 258-59. Brown then unsuccessfully attempted to stop Marshall from choking Marie by pushing him, stabbing him with a butter knife, and by hitting him with a frying pan. Id. at 258-263, 280. Brown next saw Marie fall backwards, off the bed onto the floor. Id. at 264-65. Her screaming then stopped. Id.

Miami-Dade Police Officers Damon Reynolds and Mike Phillips arrived at the residence at 6:00 A.M. and observed several people outside the house who very upset and agitated, yelling "He's inside." Id. at 286. When Officers Reynolds, Phillips and Angelo entered the residence, they saw Marshall on top of Marie, choking her. Id. at 287-88, 301, 311, 315. Marie was lying on the ground, face down, on her stomach, wearing only a nightgown pulled up over her buttocks. Id. Marshall was straddling Marie, wearing only boxer shorts, which were pulled down by his knees. Id. at 287, 311. The officers, with guns drawn, issued repeated verbal commands for Marshall to show his hands and release Marie. Id. at 290, 311-12.

---

[4]The victim was a large women, weighing approximately 400 pounds, and suffered from a variety of health conditions; such as, hypertension, diabetes and a heart condition. See Trial Transcript at 323-24, 340-42. (DE# 16-5).

He initially refused to comply. Id. After approximately one minute, Marshall released Marie and asked the officers not to shoot. Id. Marshall was placed under arrest and handcuffed. Id. at 290, 315. Officers Reynolds and Dowd administered CPR to Marie until the paramedics arrived on the scene. Id. at 291-92. Efforts to resuscitate Marie were unsuccessful, however, and she was pronounced dead. Id. at 292. The medical examiner went to the scene to view Marie's body and he also performed the autopsy. Id. at 323-24. The medical examiner concluded that the cause of death was mechanical asphyxia and Marie's history of hypertension, diabetes mellitus and obesity did not contribute to her death. Id. at 323-24, 328, 340, 342. According to the medical examiner, it would have taken between ten and fifteen seconds for Marie to become unconscious and three to four minutes to become brain dead. Id. at 340.

## IV. Procedural History

On April 2, 2004, Marshall was arrested for the strangulation death of the victim. See Record on Direct Appeal at 1. (DE# 16-1). On the following day, the Public Defender's Office was appointed to represent Marshall. Id. Based upon a certification of conflict filed by the Public Defender's Office, on April 24, 2004, Special Assistant Public Defender Arthur Wallace was appointed to represent Marshall. Id. at 19, 20. On May 13, 2004, Marshall was charged by Amended Information with the offense of murder in the second degree. Id. at 16-17. Marshall entered a plea of not guilty to the offense charged and the case proceeded to trial before a jury.

On April 6, 2006, approximately  two years after Marshall's arrest, the state filed a pleading entitled, "Motion for Colloquy of Defendant Re Ineffective Assistance of Counsel," requesting the trial court to conduct an inquiry to determine whether Marshall was

satisfied with the performance of his court appointed counsel and whether he may be waiving any future claim of ineffectiveness. Id. at 24. The state informed the court that since his appointment, trial counsel Wallace had only deposed one state witness, the detective, he had filed no motion to suppress Marshall's confession, and had filed no defense witness list. Id. The state also advised the court that both Marshall and a witness to the crime had made statements that Marshall had been under the influence of cocaine and alcohol at the time of the murder and that cocaine psychosis could be used as the mental defect or infirmity for a defense of insanity as drug use. Id. The state noted that trial counsel; however, had not filed a notice of intent to rely on insanity as a defense. Id. The hearing initially scheduled for May 12, 2006, was continued and trial counsel subsequently advised the court on June 27, 2006, that he would be filing a notice of insanity on or before July 10, 2006. Id. at 26-9. No notice of insanity was filed, resulting in the state filing on July 17, 2006, a Motion for Timely Notice of Intent to Rely on Insanity, requesting that the case again be placed on the calendar for report. Id. at 29.

On September 8, 2006, trial counsel filed a Notice of Intent to Rely on the Defense of Insanity at trial pursuant to Fla.R.Crim.P. 3.216(c), stating that the nature of the insanity was cocaine psychosis at the time of the alleged offense and Dr. Merry Haber was listed as a possible mental health expert. Id. at 31. On the same date, the trial court granted the state's *ore tenus* motion for a mental health evaluation, and the court appointed Dr. Suarez to perform the evaluation. Id. at 3. Counsel also filed an *ex parte* motion seeking an order from the court directing the health and medical services department of the Miami-Dade Department of Corrections to provide the defense copies of any and all mental

health records pertaining to Marshall. Id. at 32. The motion was granted by order entered on September 16, 2006. Id. The trial court additionally ordered the defense to provide the state with a copy of Dr. Haber's report. Id. 33, 37.

The trial commenced on November 14, 2006, and immediately before jury selection began, various pretrial motions were presented to the court. See Transcript of trial conducted on November 14, 2006, Vol. 1, at 4-10, 17-8. (DE# 16-3). During argument, trial counsel indicated that the defense was no longer pursuing an insanity or voluntary intoxication defense in that the applicable law did not support such a defense. Id. Trial counsel expressly advised the court that there would be no mental health expert who would offer any specific testimony as to a mental health defense. Id. at 17-8. Trial counsel did, however, seek to admit evidence regarding the use of crack cocaine and alcohol by Marshall and a witness during the time the instant crime had been committed. Id. at 4-10. The state objected and the court denied the request, because no defense of insanity was being pursued. Id. Voir dire proceedings then followed and the jury was selected on the same day. Id. at 28-218. (DE# 16-4).

On November 15, 2006, the following morning, Marshall filed a pro se pleading entitled, "Motion for Certificate of Conflict of Interest and to Dismiss Court-Appointed Counsel." See Record on Direct Appeal at 121-28. (DE# 16-1). Marshall stated in his motion that he had not had sufficient time to complete his mental health evaluation with Dr. Haber and that counsel was not ensuring that he do so, because counsel had changed the defense strategy and was no longer pursuing any form of an insanity defense. Id. Marshall told the court that trial counsel never informed him of the new defense strategy and that he and counsel had irreconcilable differences in

the defense to pursue. Id. Marshall requested that he be permitted to represent himself at trial. Id. The court conducted a colloquy with Marshall, referring to it as a *Faretta*-hearing, and then denied the motion. See Transcript of jury trial conducted on November 15, 2006, at 224-27. (DE# 16-5). The jury trial resumed with the jury ultimately finding Marshall guilty of the crime charged in the Amended Information. Id. at 228-414. After adjudicating Marshall guilty of the offense, the court ordered that a presentence investigation report be prepared, which it was before sentencing. Id. at 414. See also Record on Direct Appeal at 158-62. (DE# 16-1).

Prior to sentencing, trial counsel filed a renewed motion for judgment of acquittal, arguing *inter alia* that the verdict was contrary to the law in that the evidence was insufficient as to malice, ill will and spite as and between Marshall and the victim. Id. at 155. Counsel asserted that, to the contrary, the evidence showed that Marshall had been a guest in the victim's home and had been involved in a romantic relationship with the victim's daughter. Id. Counsel concluded that the evidence established only the elements of manslaughter. Id. The motion was denied. See Transcript of sentence proceeding conducted on December 26, 2006, at 17-8. (DE# 16-6). The trial court sentenced Marshall as a habitual offender to a term of imprisonment of forty-five years.[5] Id. at 28. See Record on Direct Appeal at 169-71. (DE# 16-1).

Marshall prosecuted a direct appeal from his conviction and sentence, raising the following four issues: (1) whether the

---

[5]Marshall was also sentenced to a concurrent six-year term of imprisonment for having violated the terms and conditions of his probation entered in Miami-Dade County Circuit Court Case No. F03-7778 for the offenses of criminal mischief and indecent exposure. See Respondent's Appendix at 283-84. This sentence has now been served.

evidence was sufficient to support a conviction for second degree murder, (3) whether the trial court committed reversible error by not conducting a proper *Faretta* hearing, (3) whether he was denied competent mental health expert assistance at the time of trial where he demonstrated to the court that his insanity at time of offense would be a significant factor, and (4) whether the trial court committed reversible error at sentencing by not requiring a proper and complete presentence investigation report before imposing the forty-five-year sentence and by relying on erroneous statements by the state regarding his prior convictions that qualified him as a habitual offender. See Respondent's Appendix at 1-31, 32-58. (DE# 15-1). The Florida Third District Court of Appeal affirmed the conviction and sentence in a *per curiam* decision without written opinion. Marshall v. State, 15 So.3d 811 (Fla. 3d DCA 2009). The court's written opinion issued on Marshall's motion for rehearing only addressed the *Faretta* issue.[6] Id. at 812. On September 11, 2009, Marshall filed a pro se belated petition for discretionary review in the Florida Supreme Court,[7] but the petition was dismissed on November 5, 2009, pursuant to Marshall's motion for voluntary dismissal. See Marshall v. State, 22 So. 3d 538 (Fla. 2009). During the pendency of the state proceedings, Marshall filed, through counsel, a petition for writ certiorari in the United States Supreme Court,[8] and the petition was denied on April 19, 2010. Marshall v. Florida, 130 S. Ct. 2103 (2010).

Shortly after all direct appellate proceedings had concluded, Marshall returned to the state trial court, filing a pro se motion for postconviction relief pursuant to Fla.R.Crim.P. 3.850, alleging

---

[6]See Respondent's Appendix at 86-97. (DE# 15-1).

[7]See Respondent's Appendix at 262-64. (DE# 15-1).

[8]See Respondent's Appendix at 233-55. (DE# 15-1).

that he received ineffective assistance of trial and appellate counsel. See Respondent's Appendix at 59-61. (DE# 15-1). Specifically, he alleged that trial counsel improperly failed to object to the standard jury instruction on the lesser-included offense of manslaughter. Id. at 59. He alleged that appellate counsel had improperly failed to raise the same issue as fundamental error on direct appeal. Id. at 59-60. The trial summarily denied the motion on the merits as to trial counsel's representation. Id. at 59. As to the ineffective assistance of appellate counsel claim, the trial court dismissed the claim, finding that it was without jurisdiction to rule on that ground for relief and that the claim was to be properly brought in the appellate court that heard the direct appeal. Id. at 59-60. It does not appear that Marshall took an appeal from this ruling.[9]

Days later, Marshall filed a pro se Amended Rule 3.850 motion with supporting Appendix of exhibits, raising several claims of ineffective assistance of counsel, which included the grounds raised here as claims five and six. Id. at 62-96. The state filed a response, asserting that Marshall was not entitled to postconviction relief, because his claims were meritless, and Marshall filed a reply. Id. at 97-104, 105-13. The trial court in a thorough and well-reasoned written order agreed with the state, and denied Marshall relief. Id. at 116-21, 122. The trial court's ruling was affirmed on appeal in a per curiam decision without written opinion. Marshall v. State, 56 So. 3d 11 (Fla. 3d DCA 2011)(table).

---

[9] Full and careful review of the record here and the online docket of the Florida Third District Court of Appeal, see www.3dca.flcourts.org, which this Court takes judicial notice, reveals that the respondent erroneously states that the trial court's ruling was appealed. The respondent is apparently confusing the appeal from the subsequent order, denying the amended Rule 3.850 motion.

While his appeal was pending, Marshall filed in the Florida Third District Court of Appeal a pro se petition for writ of habeas corpus with supporting exhibits and sworn affidavit from appellate counsel, raising the identical ineffective assistance of appellate counsel claim that had been improperly presented in the Rule 3.850 motion. See Respondent's Appendix at 123-47. After the state had filed a response and Marshall had filed subsequent pleadings, the appellate court denied the petition and denied rehearing without explanation. Marshall v. State, 75 So.3d 286 (Fla. 3d DCA 2011)(table). Not long after, Marshall filed a second pro se petition for writ of habeas corpus in the state appellate court, raising the same ineffective assistance of appellate counsel earlier presented. See Respondent's Appendix at 183-206. Marshall then shortly thereafter filed a motion to stay the proceedings, relying on the Florida Supreme Court's granting of discretionary review in State v. Haygood, 54 So. 3d 1035 (Fla. 3d DCA 2011)(erroneous manslaughter by act instruction not fundamental error where jury also instructed on manslaughter by culpable negligence), rev. granted, 61 So. 3d 410 (Fla. 2011)(oral argument held Dec. 12, 2011). See Respondent's Appendix at 207-08. The state filed a response, asserting that the petition was untimely, improperly successive and without merit based on the law of the case for the same reasons that the previous petition had been denied. Id. at 209-32. Marshall was again denied relief without explanation. Marshall v. State, 92 So.3d 836 (Fla. 3d DCA 2011)(table). Not long after all state court proceedings had concluded, Marshall came to this Court, filing the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

## V. Threshold Issues- Timeliness, Exhaustion and Procedural Bar

The respondent rightfully does not challenge the timeliness of the instant petition. See 28 U.S.C. §2244(d)(1)-(2). The respondent

10

also concedes that the claims raised in this petition, save ground six, have been properly exhausted before the state courts. See 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[10] The respondent asserts that other than ground six, the claims are not subject to any procedural bars. See also Cone v. Bell, 556 U.S. 449, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009).

Marshall claims in ground six that he received ineffective assistance of trial counsel, because his lawyer failed to investigate and present the defense of insanity based upon his long term use of mind altering drugs. Full and careful review of the record reveals that the identical claim was raised in Marshall's Amended Rule 3.850 motion which was disposed of on the merits by the trial court. See Respondent's Appendix at 59-61. (DE# 15-1). The trial court's ruling was affirmed on appeal. See Marshall v. State, 56 So. 3d 11 (Fla. 3d DCA 2011)(table). Thus, contrary to the respondent's assertion, claim six of this federal petition has

---

[10]It is beyond dispute that before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies; 28 U.S.C. §2254(b)(1), thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29-30 (2004)(citing Duncan v. Henry, 513 U.S. 364, 365 (1995)(per curiam)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Further, to provide the state with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court thereby alerting that court to the federal nature of the claim. Baldwin, 541 U.S. at 29-30; Duncan, 513 U.S. at 365-366. See also O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Thus, an applicant's federal writ of habeas corpus shall not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). In Florida, exhaustion is ordinarily accomplished on direct appeal. If not, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979). Claims of ineffective assistance of counsel are generally not reviewable on direct appeal, but are properly raised in a motion for postconviction relief. See Kelley v. State, 486 So.2d 578, 585 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). A claim of ineffective assistance of appellate counsel is raised by petition for writ of habeas corpus in the appropriate district court of appeal. State v. Dist. Ct. of Appeal, First Dist., 569 So. 2d 439, 442 n.1 (Fla. 1990).

been properly exhausted, requiring review on the merits of all claims raised in the instant federal petition.[11]

## VI. Standard of Review

This case was filed long-after April 24, 1996, so it is governed by 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). See Abdul-Kabir v. Quarterman, 530 U.S. 233, 246, 127 S.Ct. 1654, 1664 (2007); Davis v. Jones, 506 F.3d 1325, 1331, n.9. (11th Cir. 2007). Under §2254(d), a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §2254(d).

As the Supreme Court has explained, the statutory phrase "clearly established Federal law" refers only to Supreme Court decisions issued at the time the state court decision was rendered. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38, 45, 181 L.Ed.2d 336 (2011)(a Supreme Court decision issued three months after the last state court decision on the merits of a federal constitutional issue cannot be considered in determining clearly established federal law for §2254(d)(1) purposes); Cullen v. Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011)("State-court decisions are measured against [the Supreme] Court's precedents as

---

[11]It is noted that Section 2254, as amended by the AEDPA, permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See Johnson v. Scully, 967 F.Supp. 113 (S.D.N.Y. 1996); Walker v. Miller, 959 F.Supp. 638 (S.D. N.Y. 1997; Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996). Thus, even if any of the claims are technically unexhausted, this Court has chosen to exercise the discretion now afforded by the AEDPA.

of the time the state court renders its decision.")(quotation marks omitted); Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003)(explaining that "clearly established Federal law under §2254(d)(1)" is measured "at the time the state court renders its decision")(quotation marks omitted). "[A]n unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. ___, 130 S.Ct. 1855, 1862 (2010)(quotation marks omitted).

The Supreme Court repeatedly has admonished that "[t]he petitioner carries the burden of proof" and that the §2254(d)(1) standard is a high hurdle to overcome. See Bobby v. Dixon, 565 U.S. ___, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (2011)("Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.")(quoting Harrington v. Richter, 562 U.S. ___, 131 S.Ct. 770, 786-87 (2011))(quotation marks omitted). See also Cullen, 131 S.Ct. at 1398 (acknowledging that Section 2254(d) places a difficult burden of proof on the petitioner); Renico, 130 S.Ct. at 1866 ("AEDPA prevents defendants-and federal courts-from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); Woodford v. Visciotti, 537 U.S. 19, 24 (2002)(Section 2254(d) "demands that state-court decisions be given the benefit of the doubt.").

It is noted that the state court is not required to cite, or even have an awareness of, governing Supreme Court precedent, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); cf. Harrington, 131 S.Ct. at 785 (reconfirming that "§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference); Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(quoting Early v. Packer, 537 U.S. at 7-8). Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. Harrington, 131 S.Ct. at 780-84 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); Gill v. Mecusker, 633 F.3d 1272, 1288 (11th Cir. 2011)(acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference, citing Harrington, 131 S.Ct. at 784-85 and Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1254 (11th Cir. 2002)). See also Renico, 130 S.Ct. at 1862 ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt." (citations and internal quotation marks omitted)).

To the extent that Petitioner's claims were adjudicated on the merits in the state courts, it must be evaluated under §2254(d) and the Supreme Court has held that review "is limited to the record

that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 131 S.Ct. at 1398. Consequently, this Court is limited to reviewing only the record that was before the state court at the time it rendered its order. <u>Id</u>. Finally, 28 U.S.C. §2254(e)(1) dictates that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence." 28 U.S.C. §2254(e)(1). <u>See</u> <u>Ward v. Hall</u>, 592 F.3d 1144, 1155–56 (11th Cir. 2010), *cert. denied*, ___ U.S. ___, 131 S.Ct. 647, 178 L.Ed.2d 513 (2010).

## VII.   <u>Discussion</u>

### A. <u>Sufficiency of the Evidence</u>

Marshall claims in **ground one** that the evidence admitted at trial was insufficient to sustain his conviction for second-degree murder in that the state had not proved all elements of the offense. This claim is meritless. In light of the competent direct evidence admitted at trial upon which the jury's verdict was based there was more than sufficient evidence to satisfy a reasonable trier of fact that Marshall was guilty of second degree murder.[9]

---

[9]The standard for review of the sufficiency of the evidence on a petition for federal habeas corpus relief is whether the evidence presented, viewed in a light most favorable to the state, would have permitted a rational trier of fact to find the petitioner guilty of the crimes charged beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979); <u>Smith v. White</u>, 815 F.2d 1401 (11th Cir. 1987). This familiar standard gives full play to the responsibility of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. <u>See</u> <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11th Cir. 1987), <u>citing</u>, <u>Jackson v. Virginia</u>, 443 U.S. at 326. This standard of review is equally applicable to direct or circumstantial evidence. <u>Jackson v. Virginia</u>, 443 U.S. at 320; <u>United States v. Peddle</u>, 821 F.2d 1521, 1525 (11th Cir. 1987). In Florida, the test for the sufficiency of the evidence is whether a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Melendez v. State</u>, 498 So.2d 1258, 1261 (Fla. 1986) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979)). A defendant who challenges the sufficiency of the evidence admits not only the facts stated and the evidence adduced, but also every reasonable inference to be drawn from the evidence that is favorable to the state. <u>Gant v. State</u>, 640 So.2d 1180, 1181 (Fla. 4th DCA

See <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).

In Florida, to convict a defendant of second-degree murder, the state is required to establish that (1) the victim is dead, (2) the death was caused by the conduct of the defendant, and (3) the death was an unlawful killing accomplished by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. See <u>Fla.Stat</u>. §782.04(2). The element of "depraved mind" has been defined as an act done from "ill will, hatred, spite or an evil intent." See <u>Rayl v. State</u>, 765 So.2d 917 (Fla. 2d DCA 2000). In order to establish the "malice" element in Florida, it must be proved that the illegal act is one that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; (2) is done from ill will, hatred, spite or an evil intent; and (3) is of such a nature that the act itself indicates an indifference to human life. <u>Rasley v. State</u>, 878 So. 2d 473 (Fla. 1st DCA 2004).

Marshall contends that he was not of ordinary judgment at the time of the act and that his conduct was not done from ill will, hatred, spite or evil intent. The evidence as summarized above clearly indicates otherwise. For example, the testimony of the medical examiner established that the victim died of mechanical asphyxiation. The testimony from the multiple eyewitnesses established that Marshall was well acquainted with the victim and the victim's house. The testimony further established that while the victim was asleep in her bedroom, Marshall broke through the locked bedroom door. Upon entering the bedroom, he jumped on top of the unwell victim and began choking her. The victim's friend, who

---

1994). It is for the jury to decide what inferences are to be drawn from the facts. <u>Taylor v. State</u>, 583 So.2d 323, 328 (Fla. 1991). So long as there is sufficient evidence in the record to support such inferences, the appellate court will affirm the judgment. <u>Adkins v. Adkins</u>, 650 So.2d 61, 62 (Fla. 3d DCA 1994).

had been in the bedroom with the victim, attempted to stop
Marshall, but he forcibly pushed her aside and continued to
strangle the victim. Another resident of the house screamed at
Marshall to stop his attack, but he persisted even when she
attempted to get him away from the victim, using as weapons a knife
and frying pan. And, even after the victim had fallen off the bed
onto the floor, Marshall continued choking the victim and did not
stop his unprovoked attack for a few minutes after the police
arrived and ordered him to do so with guns drawn.

Here, a person of ordinary judgment would understand the
lethal consequences of strangulation, and that perpetration of such
an act showed an indifference to human life. See, e.g., Randall v.
State, 760 So. 2d 892 (Fla. 2000)(while choking victim for purposes
of heightened sexual gratification, defendant became enraged and
used greater force; court found evidence sufficient for conviction
of second-degree murder). The ill will and evil intent here can
certainly be inferred from the above summarized actions of
Marshall. As was the prerogative of the jury, after considering the
evidence and the demeanor of the witnesses, it chose to believe the
testimony of the state witnesses. This Court must defer to the
jury's judgment as to the weight and credibility of the evidence.
See Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir. 1987).

Thus, when taken in the light most favorable to the state, the
evidence presented at trial was more than ample to have permitted
a rational trier of fact to find that Marshall committed the
offense for which he was convicted in that his act of strangling
and asphyxiating the victim was done with a depraved mind. Marshall

17

was therefore properly found guilty of second degree murder.[10]
Jackson v. Virginia, supra. The appellate court's affirmance of
Marshall's conviction on direct appeal, where this claim of
insufficiency of the evidence was raised and rejected, is not in
conflict with clearly established federal law or based on an
unreasonable determination of the facts, and its result should not
be disturbed. 28 U.S.C. §2254(d); Williams v. Taylor, supra. See
also Coleman v. Johnson, _____ U.S. _____, 132 S.Ct. 2060
(2012)(holding that claims brought under Jackson v. Virginia face
a high bar in federal habeas proceedings, because they are subject
to two layers of judicial deference: (1) on direct appeal, it is
the responsibility of the jury—not the court—to decide what
conclusions should be drawn from evidence admitted at trial, and a
reviewing court may set aside the jury's verdict on the ground of
insufficient evidence only if no rational trier of fact could have
agreed with the jury; and (2) on habeas review, a federal court may
not overturn a state court decision rejecting a sufficiency of the
evidence challenge simply because the federal court disagrees with
the state court, but instead may do so only if the state court
decision was objectively unreasonable. 28 U.S.C. §2254(d)).

## B. *Faretta*-hearing

Marshall claims in **ground two** that the trial court erred when

---

[10]Marshall's defense at trial was that he was, at most, guilty of the
lesser included offense of manslaughter. This defense was properly rejected by
the jury. In Florida, manslaughter is defined as follows:

> The killing of a human being by the act, procurement, or culpable negligence
> of another, without lawful justification according to the provisions of
> chapter 776 and in cases in which such killing shall not be excusable
> homicide or murder, according to the provisions of this chapter is
> manslaughter....

Fla.Stat. §782.07 (West 2002).

it failed to conduct a proper *Faretta* hearing after he filed a <u>pro se</u> motion to dismiss trial counsel on the basis of ineffectiveness. Marshall concedes that the trial court conducted a *Nelson*[11] hearing by inquiring as to the nature of the conflict between himself and trial counsel. He maintains, however, that the court never advised him that he had the right to self-representation in compliance with *Faretta*, although the court was aware that he no longer wanted his trial counsel to represent him.

The Sixth Amendment grants an accused the right to represent himself at trial. <u>Faretta v. California</u>, 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). Before representing himself, a defendant must make a clear and unequivocal request to do so and be made aware of the benefits he relinquishes by doing so. <u>Id</u>. at 835, 95 S.Ct. at 2541. Thus, a trial court's obligation to conduct a " *Faretta* hearing," where a defendant is made aware of the dangers and disadvantages of self-representation, is triggered by the defendant's "clear and unequivocal assertion of a desire to represent himself." <u>See, e.g.,</u> <u>Raulerson v. Wainwright</u>, 469 U.S. 966, 969–70, 105 S.Ct. 366, 369, 83 L.Ed.2d 302 (1984)(Marshall, J. dissenting from denial of certiorari)("Accordingly, in *Faretta* we indicated that a defendant's clear and unequivocal assertion of a desire to represent himself must be followed by a hearing, in which he is 'made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" (*quoting* <u>Faretta</u>, 422 U.S. at 835, 95 S.Ct. 2525)(footnote

---

[11]In brief, *Nelson* stands for the proposition that an inquiry by the trial court is appropriate when an indigent defendant attempts to discharge current, and obtain new, court-appointed counsel prior to trial due to ineffectiveness. <u>Nelson v. State</u>, 274 So.2d 256 (Fla. 4th DCA 1973). <u>See also</u> <u>Handpick v. State</u>, 521 So.2d 1071 (Fla.), <u>cert.</u> <u>denied</u>, 488 U.S. 871 (1988).

omitted)); Gill v. Mecusker, 633 F.3d 1272, 1293 (11th Cir. 2011)(stating that although *Faretta* was not primarily concerned with clarity and equivocation in making a request to proceed *pro se*, it is clear from the Court's decision that a trial court's obligation to conduct a *Faretta* hearing, is triggered by the defendant's clear and unequivocal assertion of a desire to represent himself.); Stano v. Dugger, 921 F.2d 1125, 1144 (11th Cir. 1991)("Once the right of self-representation has been asserted clearly and unequivocally, understandable to the trial court by the reasonable person standard, then and only then is that court, under Supreme Court and Eleventh Circuit case law, required to conduct the requisite inquiry to determine whether the criminal defendant's decision to represent himself is knowing, intelligent and voluntary."); Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)("In recognition of the thin line that a district court must traverse in evaluating demands to proceed *pro se*, and the knowledge that shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record, this Court has required an individual to clearly and unequivocally assert the desire to represent himself."); Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir. 1986)("Insofar as the desire to proceed *pro se* is concerned, petitioner must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request [to proceed pro se] was not made." ).

As indicated above, the record reveals that after the jury had been sworn, Marshall presented to the trial court a pro se written motion to dismiss appointed counsel on the basis of a conflict. See Transcript of jury trial conducted on November 15, 2006, at 215, 224-27. See also Record on Direct Appeal at 121-28. In that motion,

Marshall indicated that he would prefer to represent himself at
trial. Id. at 126. Upon being made aware of the motion in open
court, the court stated that it would conduct a "*Faretta* inquiry,"
during which Marshall informed the court of all complaints he had
with the representation received from counsel. Id. He told the
court that he had been misled as to the defense that was to be
presented in that counsel had not permitted him to complete the
mental health expert's evaluation with respect to the defense of
insanity by reason of a diagnosis of cocaine psychosis. Id. He also
complained that trial counsel had not kept him apprised of
preparations for trial and the new defense that was to be pursued
at trial. Id. After having permitted Marshall to voice all his
concerns, the court then ruled as follows:

> Your motion is denied.
>
> The Court finds that you are properly represented.
> The Court will also note the fact that I brought
> defense counsel before this court, I can't even
> count the number of times, and we've had
> conversations about this specific defense. This is
> a 2004 case, and this court is -- we're are going
> forward.

Id. at 227. Immediately after the ruling, Marshall simply stated:
"Okay." Id. Not once during the exchange, did Marshall advise the
court that he wanted to proceed *pro se*. Id. at 224-27.

The trial proceedings then resumed. After excusing the jury to
deliberate, the court went on to clarify its ruling, stating:

> With respect to the Faretta inquiry, the Court just wants to
> make sure the record reflects that I did conduct the inquiry,
> other than me saying in [sic] conducting the inquiry, and that
> I gave Mr. Marshall a full opportunity to explain to the court
> his concerns with respect to counsel. I heard those concerns,
> I evaluated those concerns, and based upon all previous
> communications concerning the defense and Mr. Marshall's use
> of cocaine and how it may or may not have played a role with
> respect to this offense, this Court finds that the - that

21

counsel is not - is competent, has not been ineffective, and for those reasons the Court did not grant Mr. Marshall's request to have new counsel appointed.

Id. at 408-09.

Marshall raised as an issue on direct appeal the identical claim now presented in this federal petition. The Florida Third District Court of Appeal issued a written opinion solely, addressing the subject issue on Marshall's motion for rehearing, stating as follows:

> Based upon our review of the record, Marshall's alleged requests for self-representation were at best equivocal; he was not entitled to an inquiry on the subject of self-representation under *Faretta*. *See* Rios v. State, 696 So.2d 469 (Fla. 2d DCA 1997)(holding that if court-appointed counsel is found, after a proper *Nelson* inquiry,FN2 to be rendering effective assistance and the defendant insists that he still wants to discharge him or her, then a *Faretta* hearing is in order); *accord* Davila v. State, 829 So.2d 995 (Fla. 3d DCA 2002)(finding that because there was no unequivocal request for self-representation, the defendant was not entitled to an inquiry on the subject of self-representation under Faretta). Further, we cannot conclude from the record before us that the trial court abused its discretion in refusing to permit Marshall to discharge his counsel after holding a proper *Nelson* hearing. *See* Rios, 696 So.2d at 471.
>
> FN2. Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).

Marshall v. State, 15 So.3d at 812. Marshall's petition for writ of certiorari was denied. Marshall v. Florida, 130 S. Ct. 2103 (2010).

While the trial court referred to the colloquy with Marshall as one conducted pursuant to *Faretta*, it is clear that the court instead followed state procedure and conducted what is referred to as a "*Nelson* hearing." The court found that the general complaints about defense strategy were not sufficient to justify discharge of appointed counsel pursuant to applicable state law and the record

before it. The court did not pursue the issue of self-representation. The court's failure to go on to conduct a *Faretta* hearing was proper in this case, because Marshall's request for self-representation was at best equivocal, as found by the Florida appellate court on direct appeal. Marshall was not entitled to such an inquiry under the facts here. Moreover, "[a] defendant can waive his *Faretta* rights." McKaskle v. Wiggins, 465 U.S. 168, 182, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Marshall's acceptance of assistance from court appointed counsel constituted such a waiver of his *Faretta* rights and/or abandonment of his initial written invocation of his right to represent himself. Id. For all these reasons, Marshall is not entitled to federal habeas corpus relief on this claim. See 28 U.S.C. §2254(d); Gill, 633 F.3d at 1296 (holding that petitioner not entitled to habeas corpus relief since record demonstrated that invocation of right to self-representation was equivocal and not sufficient to invoke *Faretta* and, therefore, neither trial court's rejection of petitioner's request to proceed *pro se* nor the Florida appellate court's affirmance thereof, was objectively unreasonable under applicable AEDPA standard).

## C. Insanity Defense

Marshall claims in **ground three** that he was improperly denied the assistance of multiple mental health experts to assess his sanity at the time of the offense and assist at trial in establishing a defense of insanity super-induced by mind-altering drugs. Review of the record indicates that pursuant to trial counsel's Notice of Intent to Rely on the Defense of Insanity at trial pursuant to Fla.R.Crim.P. 3.216(c), Dr. Merry Haber was listed as a possible mental health expert and the nature of the insanity was specified as cocaine psychosis at the time of the alleged offense. See Record on Direct Appeal at 31. On the same date, the trial court granted the state's *ore tenus* motion for a

23

mental health evaluation, and the court appointed Dr. Suarez to perform the evaluation. Id. at 3.

Regarding a possible insanity defense, in Florida, as of October 1, 1999, the Florida Legislature eliminated the defense of voluntary intoxication. Gibbs v. State, 904 So. 2d 432, 437 (Fla. 4th DCA 2005); Fla.Stat. §775.051 (West 1999). Thus, intoxication could not be used to suggest that Marshall lacked the necessary mental state to commit the crime in that the murder was committed in 2004. Further, any argument by Marshall that intoxication could be used to negate the ill will or intent necessary to convict him of second degree murder would be meritless. Second degree murder is a general intent crime, and voluntary intoxication was not a defense to the charge even without the effect of the statute. Gibbs, 904 So.2d at 435; Kiley v. State, 860 So.2d 509, 510 n.1 (Fla. 4th DCA 2003).

As far as drug use in Florida, "the law recognizes insanity super-induced by the long and continued use of intoxicants so as to produce 'a fixed and settled frenzy or insanity either permanent or intermittent.'" Cirack v. State, 201 So.2d 706, 709 (Fla. 1967) and cases cited therein. However, evidence of long-term substance abuse alone does not prove insanity. State By and Through Office of State Attorney for Twentieth Judicial Circuit v. McNally, 336 So.2d 713, 715 (Fla. 2d DCA 1976). The rule in Florida is, therefore, that voluntary intoxication and long-term substance abuse without more cannot be the basis for an insanity defense. See Cirack v. State, supra.

Here, Marshall was evaluated by a defense mental health expert, even if not as extensively as he would have liked, and a court appointed expert. Both experts apparently concluded that

Marshall was not legally insane pursuant to the applicable standards.[12] There is also nothing in the record whatever to demonstrate that, even if Marshall suffered from long-term substance abuse, he was in a "fixed and settled frenzy or insanity either permanent or intermittent" required under the *Cirack*-standard to support a theory of insanity based upon long-term substance abuse. Since voluntary intoxication was not a defense under Florida law and since there was no evidence that Marshall was insane as a result of his long-term drug abuse or otherwise, the instant claim was properly rejected on direct appeal.

Further, the trial court's ruling prohibiting the admission of evidence regarding Marshall's alleged drug abuse when no insanity defense or voluntary intoxication defense was presented did not result in a violation of Marshall's due process rights or state law.[13] See Montana v. Egelhoff, 518 U.S. 37 (1996)(holding that State of Montana disallowing consideration of voluntary intoxication when a defendant's state of mind is at issue did not violate due process principles). The Supreme Court has clearly held that whether or not insanity is a defense is a matter for the states. Id. at 56 ("The doctrines of *actus reus*, *mens rea*, insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. This process of adjustment has always been thought to be the

---

[12]The standard in Florida for insanity is the *McNaughton* Rule, which considers 1) the individual's ability at the time of the incident to distinguish right from wrong, and 2) his ability to understand the wrongness of the act committed. See Gurganus v. State, 451 So.2d 817, 820 (Fla. 1984). See also Reynolds v. State, 837 So.2d 1044, 1048(Fla. 4th DCA 2002).

[13]See e.g., Transcript of trial conducted on November 14, 2006, at 4-10, 17-8, 268-71, 347-50.

province of the States.") Id. at 56, *quoting*, <u>Powell v. Texas</u>, 392
U.S. 514, 535-536, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254 (1968)).
<u>See also</u> <u>Chestnut v. State</u>, 538 So.2d 820 (Fla. 1989)(holding that
evidence of abnormal mental condition not constituting legal
insanity is inadmissible for purposes of proving either that
accused could not or did not entertain the specific intent or state
or mind essential to proof of the offense, in order to determine
whether crime charged, or lesser degree thereof, was in fact
committed).

Accordingly, the appellate court's affirmance of Marshall's
conviction on direct appeal, where the identical claim was raised
and rejected, is not in conflict with clearly established federal
law or based on an unreasonable determination of the facts, and its
result should not be disturbed.[14] 28 U.S.C. §2254(d); <u>Williams v.
Taylor</u>, <u>supra</u>.

### D. <u>Unlawful Sentence</u>

Marshall claims in **ground four** that his sentence was unlawful,
because the trial court improperly sentenced him without first
requiring a proper and complete presentence investigation report
and the court based the habitual offender sentence on erroneous
statements made by the prosecutor regarding his prior convictions.
As correctly argued by the respondent, Marshall's challenge to his
habitual offender sentence as violative of state sentencing law is
not cognizable in this federal habeas corpus proceeding.

It is well settled that a state's interpretation of its own

---

[14]As stated herein, the appellate court's decision constitutes an
"adjudication on the merits," and is thus entitled to deference under the
Antiterrorism and Effective Death Penalty Act (AEDPA) for purposes of subsequent
federal habeas corpus review, even when the state appellate court did not issue
an opinion providing any discussion with respect to this claim.

rules or statutes does not raise a federal constitutional issue unless it rises to a level of denial of fundamental due process. <u>Redman v. Dugger</u>, 866 F.2d 387 (11th Cir. 1989); <u>Machin v. Wainwright</u>, 758 F.2d 1431, 1433 (11th Cir. 1985); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053 (11th Cir. 1983). More on point with regard to this petition, the Eleventh Circuit has consistently held that federal courts cannot review a state's alleged failure to adhere to its own sentencing provisions. <u>Branan v. Booth</u>, 861 F.2d 1507 (11th Cir. 1988), and cases cited. Federal habeas corpus review of a state law claim is, therefore, precluded if no due process violations or facts indicating such violations are alleged. A state court's error in applying its own sentencing provisions is not cognizable on federal habeas corpus review, even when it is "couched in terms of equal protection and due process." <u>Id</u>. at 1508, quoting <u>Willeford v. Estelle</u>, 538 F.2d 1194, 1996-98 (5th Cir. 1976).

Accordingly, a state decision affecting only the sentencing rights of prisoners under state law is of no consequence in relation to a federal habeas corpus application. There is nothing in the record to indicate that fundamental due process was denied in Marshall's case. Marshall qualified as an habitual felony offender under Florida law, <u>see</u> <u>Fla.Stat</u>. §775.084, and his forty-five-year sentence did not exceed the statutory maximum of life imprisonment. <u>See</u> <u>Fla.Stat</u>. §§782.04(2), 775.082, 775.084. <u>See also</u> Transcript of sentence proceeding conducted on December 26, 2006 (DE# 16-6); Answer Brief of Appellee at 18-22. (Record on Direct Appeal at 53-7)(DE# 15-1).

### E. <u>Ineffective Assistance of Trial Counsel</u>

Marshall raises two separate claims of ineffective assistance of trial counsel. These claims were unsuccessfully presented to the

state courts in the postconviction proceedings. The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Under the applicable test set forth in *Strickland*, for a petitioner to prevail on a claim of ineffective assistance of counsel, a petitioner must show both that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). There is a strong presumption that counsel acted effectively. Id. at 690. "Surmounting *Strickland's* high bar is never an easy task." Padilla v. Kentucky, 559 U.S. ____, ____, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689-690, 104 S.Ct. 2052.

Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. See also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838 (1993). "The question is whether an attorney's representation amounted to incompetence under

'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 778. A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, ___, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), *citing*, Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." Knowles, 129 S.Ct. at 1420. (citations omitted). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. For the following reasons, Marshall's claims of ineffective assistance of counsel fail.

### 1. Jury Instruction

Marshall alleges in **ground five** that his lawyer failed to lodge a contemporaneous objection to the flawed jury instruction as to the lesser included offense of manslaughter.[15] In the initial postconviction proceeding, the trial court expressly denied Marshall relief on this claim, stating as follows:

---

[15]The trial court instructed the jury that manslaughter was a lesser included offense of the crime charged and that before it could find Marshall guilty of the offense of manslaughter, the state would have to prove the following two elements beyond a reasonable doubt:

One, Marie Sanders is dead.

Two, James Marshall *intentionally* caused the death of Marie Sanders; or the death of Marie Sanders was caused by the culpable negligence of James Marshall.

However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide, as I've previously explained those terms to you.

(emphasis added)(Transcript of trial conducted on November 15, 2006, at 398-99)(DE# 16-5).

> [Marshall] alleges that trial counsel was ineffective for
> failing to object to the manslaughter instruction thus waiving
> his right to appeal. [Marshall] alleges that his trial counsel
> should have objected to the manslaughter instruction because
> it was faulty pursuant to Florida Supreme Court's decision in
> State v. Montgomery, 2010 WL1372701 (Fla. Apr 8, 2010) which
> held that the standard jury instruction on manslaughter by
> act, which required the jury to find that the defendant
> "intentionally caused the death" of the victim, improperly
> required proof of intent to kill. However, trial counsel
> cannot be held ineffective for failing to anticipate changes
> in the law. See Villavicencio v. State, 719 So.2d 322 (Fla. 3d
> DCA 1998), Botek v. State, 787 So.2d 961 (Fla. 3d DCA 2001)[.]
> When this case was tried, trial counsel could not have
> anticipated the change in the law brought about by Montgomery.
> Thus counsel was no[t] ineffective for failing to object to
> the standard manslaughter instruction given at the time and
> this allegation is denied.

(Order Denying the First Allegation in Defendant's Motion to
Vacate, Set Aside, or Correct Pursuant to Rule 3.850 and Dismissing
His Second Allegation at 1)(DE# 15-1 at 59). When Marshall raised
the identical claim in his Amended Rule 3.850 motion, the claim was
again denied, for the reasons stated in the earlier order, and the
denial was affirmed on appeal. See Marshall v. State, 56 So. 3d 11
(Fla. 3d DCA 2011)(table).

As background on the relevant Florida law, the Florida First
District Court of Appeal in Montgomery v. State, 70 So. 3d 603
(Fla. 1st DCA 2009), held on February 12, 2009, that the state was
not required to prove intent to kill in order to establish the
crime of manslaughter by act. The court then went on to hold that
the instruction read to the jury in that case improperly imposed
that additional element when it tracked the language of the
standard jury instructions for manslaughter by act, providing that
the state had to prove that Appellant "intentionally caused [the
victim's] death" in order to establish that he committed

30

manslaughter.[16] <u>Id</u>. The court then went on to find that fundamental error was committed and, therefore, reversed Montgomery's conviction and remanded for a new trial. <u>Id</u>. at 607-08. The court certified conflict and the following issue of great public importance to the Florida Supreme Court: "Is the state required to prove that the defendant intended to kill the victim in order to establish the crime of manslaughter by act?" <u>Id</u>. at 608.

In a decision issued on April 8, 2010, the Florida Supreme Court approved the decision of the First District Court of Appeal in *Montgomery* to the extent that it held that manslaughter by act did not require proof that the defendant intended to kill the victim and concluded that in that case, the use of the standard jury instruction on manslaughter constituted fundamental error. <u>State v. Montgomery</u>, 39 So.3d 252, 259-60 (Fla. 2010). The court, therefore, answered the certified question in the negative, holding that the crime of manslaughter by act does not require that the state prove that the defendant intended to kill the victim and further held that the intent which the state must prove for the purpose of manslaughter by act is the intent to commit an act that was not justified or excusable, which caused the death of the victim. <u>Id</u>. Moreover, the court concluded that the use of the standard jury instruction on manslaughter constituted fundamental, reversible error in Montgomery's case and required that Montgomery receive a new trial. <u>Id</u>.

With this background in mind, the state courts in the

---

[16]Before *Montgomery* had been decided, the standard jury instruction was modified, stating: "In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death, only an intent to commit an act which caused death." <u>See</u> <u>Montgomery v. State</u>, 70 So.3d 603, 608 n.3 (Fla. 1st DCA 2009), *citing*, <u>Hall v. State</u>, 951 So.2d 91 (Fla. 2d DCA 2007); <u>In re: Std. Jury Instr. in Crim. Cases-Report No. 2007-10</u>, 997 So.2d 403, 403 (Fla. 2008).

postconviction proceedings in the instant case properly rejected the subject ineffective assistance of counsel claim, because the instruction given by the trial court was not held improper by any state court decision until the Florida First District Court of Appeal issued its opinion in <u>Montgomery v. State</u>, 70 So. 3d 603 (Fla. 1st DCA 2009), on February 12, 2009, which was more than two years after the jury returned a verdict in Marshall's trial. Further, the Florida Supreme Court did not issue its decision in *Montgomery* until April 8, 2010.

Under *Strickland*, a counsel's performance is measured for "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. at 2065. Trial counsel's failure to anticipate the Florida First District Court of Appeal's decision in *Montgomery*, which led to the precedential Florida Supreme Court's decision, does not fall outside the wide range of professional assistance. The Eleventh Circuit has consistently held that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop; <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994), and to be effective within the bounds set by *Strickland*, an attorney need not anticipate changes in the law. <u>See Jackson v. Herring</u>, 42 F.3d 1350, 1359 (11th Cir. 1995). <u>See also United States v. Ardley</u>, 273 F.3d 991, 993-994 (11th Cir. 2001)(concurrence in denial of application for rehearing *en banc*), *cert. denied*, 535 U.S. 979, 122 S.Ct. 1457, 152 L.Ed.2d 397 (2002)(in the Eleventh Circuit there is a "wall of binding precedent" which shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel); <u>Davis v. Singletary</u>, 119 F.3d 1471, 1476 (11th Cir. 1997)("[i]t was not professionally deficient for [counsel] to fail to anticipate that the law in Florida would be

changed in the future to bar the admission of hypnotically induced testimony."); Thompson v. Wainwright, 787 F.2d 1447, 1459 n. 8 (11th Cir. 1986)("defendants are not entitled to an attorney capable of foreseeing the future development of constitutional law").

The rule applies even if a claim based upon anticipated changes in the law was reasonably available at the time counsel failed to raise it. See, e.g., Pitts v. Cook, 923 F.2d 1568, 1572-74 (11th Cir. 1991)(holding that although a claim based upon Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was "reasonably available to counsel at the time of the 1985 trial, failure to anticipate the *Batson* decision and raise that claim was not ineffective assistance of counsel"). "The rule that it is not ineffective assistance for an attorney to fail to foresee a change in the law applies even when the change is such that the forfeited issue was, in hindsight, a sure fire winner." Ardley, 273 F.3d at 993, *quoting* Wright v. Hopper, 169 F.3d 695, 707-08 (11th Cir. 1999)(*Batson* issue). It is additionally noted that decisions by the First District Court of Appeal are not binding on the Third District Court of Appeal and trial courts within its jurisdiction.

Thus, trial counsel's failure to predict in November 2006, the First District Court of Appeal's decision in *Montgomery* in 2009, or the more-important later Florida Supreme Court decision issued in 2010, did not amount to ineffective assistance of counsel. Marshall is not entitled to habeas corpus relief because his counsel failed to anticipate *Montgomery*. See §2254(d); Williams v. Taylor, supra.

## 2. Insanity Defense

Marshall alleges in **ground six** that his lawyer improperly

failed to investigate and present the defense of insanity based upon his long term use of mind altering drugs. The identical ground was raised in Marshall's amended Rule 3.850 motion. The trial court entered a thorough and detailed order in which the court first reviewed the evidence admitted at trial and then denied relief on this claim in a written order. See Order Denying Defendant's Amended Motion for Postconviction Relief. (Respondent's Appendix at 114-21)(DE# 15-1). Specifically, the trial court provided the following reasons for finding the claim meritless:

> As to [Marshall's] allegation that counsel should have raised an insanity defense, [Marshall] fails to plead with specificity what mental infirmity he suffered from that would have qualified as an insanity defense. [Marshall] admits that his counsel could not have filed an insanity defense based on cocaine psychosis because he told his counsel that he was not "high" on the night in question. (See [Marshall's] Motion Page 15) Further, [Marshall] advises that he did not wish his counsel to file an insanity defense based on cocaine psychosis. (See [Marshall's] Motion Page 16)[.] The only thing that [Marshall] mentions in terms of an insanity defense is the fact that he claimed and still claims that he blacked out on the night in question and remembers nothing. This   is insufficient for an insanity defense. As such, the defense could not have raised this. Further, the defense could not have raised voluntary intoxication because [Marshall] himself admits in his motion that he was not "high" on the night in question. As such, this first part of [Marshall's] third allegation is denied.

Id. at 118-19. Again, this ruling was affirmed by the state appellate court. See Marshall v. State, 56 So. 3d 11 (Fla. 3d DCA 2011)(table).

Further, it is apparent from the record that defense counsel investigated a possible mental health defense in that he filed a Notice of Intent to Rely on the Defense of Insanity, indicating that the nature of the insanity was cocaine psychosis at the time of the alleged offense and Dr. Merry Haber was listed as a possible mental health expert. As admitted by Marshall, he was in fact

examined by Dr. Haber, although not as extensively as he claimed he should have been. Trial counsel additionally sought and was granted leave to obtain from the health and medical services department of the Miami-Dade Department of Corrections any and all mental health records pertaining to Marshall. Further, the state's request for a mental evaluation was granted. Also, from full and careful review of the record submitted in this case, it is clear that while the case was proceeding to trial over the course of approximately two years, the parties appeared before the trial court a countless number of times during which the issue of Marshall's mental health was explored and whether insanity was a viable defense in the case. Apparently, the reports of the mental health experts did not support any insanity defense applicable under Florida law, resulting in trial counsel's decision not to pursue any such defense.

As the Supreme Court reiterated in Knowles v. Mirzayance, 556 U.S. 111, 129 S.Ct. 1411 (2009), counsel cannot be constitutionally ineffective in failing to pursue a defense that had almost no chance of success, stating:

> [T]he state court's rejection of Mirzayance's ineffective-assistance-of-counsel claim [based on failure to present an insanity defense] was consistent with *Strickland*.... [W]e are unaware of no "prevailing professional norms" that prevent counsel from recommending that a plea be withdrawn when it is almost certain to lose. See *Strickland*, [466 U.S.] at 688 .... And in this case, counsel did not give up the only defense available. Counsel put on a defense to first-degree murder .... The law does not require counsel to raise every available nonfrivolous defense. See Jones v. Barnes, 463 U.S. 745, 751 ... (1983) .... Counsel also is not required to have a tactical reason-above and beyond a reasonable appraisal of a claim's dismal prospects for success for recommending that a weak claim be dropped altogether. Mirzayance has thus failed to demonstrate that his counsel's performance was deficient.

Knowles, 556 U.S. at 126-27, 129 S.Ct. at 1421-22 (citations,

internal quotation marks and footnote omitted). Likewise, the Supreme Court held in *Mirzayance* that a petitioner cannot show prejudice by counsel's failure to present a defense that had almost no chance of success under the facts and applicable law.[17] Knowles, 556 U.S. at 127, 129 S.Ct. at 422.

Here, trial counsel presented the best possible defense available under the circumstances which was to argue that the state had not proved beyond a reasonable doubt all elements of the second degree murder charge and that Marshall was guilty, if at all, of the offense of manslaughter. Conceding a client's guilt can be a reasonable trial strategy. See Florida v. Nixon, 543 U.S. 175 (2004). When counsel's strategy, given the evidence bearing on the defendant's guilt, is in his client's best interest and when the *Strickland* standard is satisfied, no tenable claim of ineffective assistance remains even where a defendant did not expressly consent to the strategy. Id. See also United States v. Thomas, 417 F.3d 1053, 1058-59 (9th Cir. 2005)(holding that defense counsel's

---

[17]It is true, as Marshall maintains, that there is evidence of record that he apparently engaged in bizarre behavior during the commission of at least one earlier offense. See e.g., Transcript of sentence proceeding conducted on December 26, 2006, at 15-6. (DE# 16-6). During the sentence proceeding, the following facts were revealed about one prior conviction:

Judge, basically in that case, [Marshall] had been over at the same home that he was at where the murder was committed in this case.

If the court recalls, the victim in this case's daughter was [Marshall's] girlfriend at the time, and at that time he wanted sex. The victim refused and he proceeded to stab her two times on the left side, then cut her on the arm. After that he fled the home. He ·was not wearing any clothing.

He then jumped on a city bus in front of the bus, without any clothing on, defecated on the bus, was subsequently arrested after that. Due to the lack of cooperation at that point the aggravated battery charge was dropped.

That is why, unfortunately, the case could only be closed on a criminal mischief and indecent exposure.

Id. Marshall claimed that he had been under the influence of cocaine at the time he engaged in such behavior. Id. at 16. Notwithstanding his history of such behavior, there is nothing of record supporting a viable insanity defense in the instant case.

concession of defendant's guilt of robbery charge on which evidence of guilt was overwhelming, in order to enhance defendant's credibility while attempting to avoid conviction on other charges of which there was less clear evidence and which carried greater penalty, did not rise to level of an entire failure to subject prosecution's case to meaningful adversarial testing, such that counsel's performance, assuming that it was deficient, was presumptively prejudicial for Sixth Amendment purposes).

In light of the overwhelming inculpatory testimony, which included eyewitness testimony from residents of the house and personal observations of the police officers, it is apparent that defense counsel's theory was sound, amounting to proper trial strategy, even if Marshall did not consent to such a strategy, as he is implicitly, if not explicitly, maintaining. Here, by conceding that Marshall committed at most the crime of manslaughter, he was able to achieve credibility with the jury, question other evidence presented by the state regarding the more serious offense of second degree murder. Counsel could then attempt to persuade the jury to find that Marshall harbored no ill will or malice against the victim and, therefore, had not intended to kill the victim. See Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988)(stating that competent trial counsel know that reasonableness is absolutely mandatory if one hopes to achieve credibility with the jury), cert. denied, 489 U.S. 1071 (1989), *overruled on other grounds*, Davis v. Singletary, 119 F.3d 1471, 1482 (11th Cir. 1997). See McNeal v. Wainwright, 722 F.2d 674, 675-76 (11th Cir. 1984)(holding that defense counsel's argument in first-degree murder prosecution without defendant's which suggested that defendant was "at best" guilty of manslaughter was made as a proper tactical decision, not amounting to unconstitutional representation).

As properly found by the trial court in the Rule 3.850 proceedings,[18] trial counsel's strategy was clearly reasonable under the circumstances of this case. See McNeal v. Wainwright, 722 F.2d 674, 675-76 (11th Cir. 1984)(holding that defense counsel's argument in first-degree murder prosecution without defendant's which suggested that defendant was "at best" guilty of manslaughter was made as a proper tactical decision, not amounting to unconstitutional representation). As stated above, it was the prerogative of the jury to believe the strong evidence admitted by the state and the testimony of the many state witnesses and not agree with the defense presented. See Wilcox v. Ford, 813 F.2d at 1143. It is noted that even knowing that Marshall's long-term substance abuse could not be the basis of a defense, trial counsel continued up until the time of trial to attempt to inform the jury of the role that drugs might have played in the commission of the crime. The fact that he was not permitted to do so does not mean that his performance was constitutionally ineffective. Finally, full review of the instant federal habeas proceedings in conjunction with the state postconviction proceedings, it appears that Marshall may be asserting that the result of the trial was fundamentally unfair or unreliable. Any such assertion is meritless. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). The fact that the defense presented at trial did not result in an acquittal or guilt of a lesser included offense also does not mean that counsel's performance was constitutionally ineffective. Defense counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing.[19] United States v. Cronic,

---

[18]See Order Denying Defendant's Amended Motion for Postconviction Relief. (Respondent's Appendix at 119-20)(DE# 15-1).

[19]In some cases, counsel's failure or inability to subject the prosecution's case to meaningful adversarial testing violates the Sixth Amendment and makes the adversarial process presumptively unreliable. United States v.

466 U.S. 648, 659 (1984).

F. Ineffective Assistance of Appellate Counsel

Marshall claims in **ground seven** that he received ineffective assistance of appellate counsel, because his lawyer failed to raise as an issue on direct appeal that the jury instruction was fundamentally flawed for the reasons stated in Montgomery v. State, 70 So.3d 603 (Fla. 1st DCA 2009). The two-prong *Strickland* test is equally applicable in assessing counsel's performance in appellate proceedings. Smith v. Robbins, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)(*Strickland* standard applies to claims alleging ineffective assistance of appellate counsel); Grubbs v. Singletary, 120 F.3d 1174, 1176 (11th Cir. 1997)(applying the *Strickland* test to a claim of ineffective assistance of appellate counsel).

The Supreme Court has held that the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. Jones v. Barnes, 463 U.S. 745 (1983). In considering the reasonableness of an attorney's decision not to raise a particular claim, this Court must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments." Eagle v. Linahan, 279 F.3d 926, 940 (11th Cir. 2001), quoting, Strickland, 466 U.S. at 691. Further, in determining whether the failure to

---

Cronic, 466 U.S. 648, 659 (1984). When such a violation occurs, so as to render the trial presumptively unreasonable, no specific showing of prejudice is required. Id. The Eleventh Circuit applies the *Cronic* dicta only in a "narrow range of cases" where there is a "fundamental breakdown of the adversarial process," Chadwick v. Green, 740 F.2d 897, 900-01 (11th Cir. 1984), and concentrates instead on whether or not the accused was denied a fair trial. Hammonds v. Newsome, 816 F.2d 611, 613 (11th Cir. 1987). In this case, Marshall was in no way denied a fair trial. As indicated herein, the record demonstrates that counsel subjected the state's case to a meaningful challenge.

raise a claim on appeal resulted in prejudice, the courts must review the merits of the omitted claim and, if it is concluded that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal. Eagle, 279 F.3d at 943. See also Digsby v. McNeil, 627 F.3d 823, 831 (11th Cir. 2010)(holding that to determine whether the petitioner's appellate counsel rendered ineffective assistance, the court must assess the strength of the claim that the petitioner asserts his appellate counsel should have raised in his state direct appeal and only if failure to bring the claim both rendered counsel's performance deficient and resulted in prejudice to the petitioner was there ineffective assistance).

Marshall is apparently contending that appellate counsel should have filed supplemental briefing based upon the First District Court of Appeal's decision in *Montgomery*, because *Montgomery* had been decided after his brief had been filed, but before the decision had been issued in his direct appeal. Even if this Court were to find that appellate counsel's performance was in some way deficient for failing to provide supplemental briefing on direct appeal, Marshall suffered no prejudice in that the outcome of the appeal would not have been different. Not long after the decision issued in Marshall's direct appeal, on December 23, 2009, the Florida Third District Court of Appeal held that the subject standard jury instructions given by the trial court, without objection, did not constitute fundamental error. Valdes-Pino v. State, 23 So. 3d 871, 872 (Fla. 3d DCA 2009). The Third District Court of Appeal, recognizing contrary analysis in *Montgomery* certified conflict with that First District Court of Appeal opinion to the Florida Supreme Court where *Montgomery* was then pending. Id. As pointed out by the respondent, at best, this provided an

inter-district conflict at the time, which was only later resolved by the Florida Supreme Court in State v. Montgomery, 39 So. 3d 252 (Fla. 2010).

And, it is important to recognize that by that time, the state district courts had determined that the fundamental error recognized in *Montgomery* was not necessarily present if the additional instruction on manslaughter by culpable negligence was also given, as it was in this case.[20] See, e.g., Salonko v. State, 42 So. 3d 801 (Fla. 1st DCA 2010)("Unlike in *Montgomery*, the jury in the instant case was not directed to choose the greater offense simply because the lesser-included offense would have improperly required a more depraved level of intent"); Cubelo v. State, 41 So. 3d 263 (Fla. 3d DCA 2010)(holding that trial court did not commit fundamental error at murder trial by giving, without objection, the then-existing standard jury instruction on manslaughter as a lesser-included offense of second-degree murder, even if

_____

[20]The trial court specifically instructed the jury:

I will now define culpable negligence for you.

Each of us has a duty to act reasonably toward others. If there is a violation of that duty without any conscious intent to harm, that violation is negligence. But culpable negligence is more than a failure to use ordinary care towards others.

In order for negligence to be culpable, it must be gross and flagrant. Culpable negligence is a course of conduct showing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to consequences, or which shows wantonness or recklessness or a grossly careless disregard for the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights.

The negligent act or omission must have been committed with an utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known or reasonably should have known was likely to cause death or great bodily injury.

(Transcript of trial conducted on November 15, 2006, at 399-400)(DE# 16-5).

instruction incorrectly stated that intent to kill was an element of manslaughter by act, where instruction also included language on manslaughter by culpable negligence, such that jury had an opportunity to convict defendant of manslaughter without finding intent to kill); Nieves v. State, 22 So. 3d 691 (Fla. 2d DCA 2009)("unlike *Montgomery* ..., the jury in Nieves' case was also instructed on the lesser-included offense of manslaughter by culpable negligence").[21]

Thus, as properly determined by the state appellate court in the state habeas corpus proceeding, Marshall's ineffective assistance of appellate counsel claim is meritless. The state appellate court holding is, therefore, not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[22] Relief must be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000). See also Reutter v.

---

[21]This Court notes that one Florida appellate court has, however, suggested, without so holding, that there may be circumstances where the same problem recognized in *Montgomery* might also exist in circumstances where the evidence does not support a theory of culpable negligence, thus rendering the proper instruction on that lesser-included offense without ameliorating effect. Haygood v. State, 54 So. 3d 1035 (Fla. 2d DCA 2011). On May 5, 2011, the Florida Supreme Court granted review in *Haywgod* and it is currently pending before the Florida Supreme Court. See Haygood v. State, 61 So.3d 410 (Fla. 2011).

[22]It cannot be overlooked that the state appellate court in the state habeas corpus proceeding was the same court that had decided Marshall's direct appeal. By denying the state habeas corpus petition without explanation, the court implicitly found that the underlying claim was meritless and would not have been successful if raised on direct appeal. Marshall submits to this Court, as he did to the state habeas court, an affidavit from former appellate attorney stating that he had rendered ineffective assistance by failing to challenge as fundamental error the subject jury instruction. See Affidavit in Support of Petitioner's Motion to Vacate. (Petitioner's Appendix at Ex. 7)(DE# 20). Admissions of inadequate performance by lawyers are not decisive in ineffective assistance claims. See Harris v. Dugger, 874 F.2d 756, 761 n.4 (11th Cir. 1989). Ineffectiveness is a question for the courts, not counsel, to decide. See id. See also Walls v. Bowersox, 151 F.3d 827, 836 (8th Cir. 1998). Accordingly, appellate counsel's belief that he rendered ineffective assistance does not mean that he did and, in this case when applying the applicable *Strickland* standard and its progeny, he did not.

Secretary for Dept. of Corrections, 232 Fed.Appx. 914, 916-917 (11th Cir. 2007)(holding that appellate counsel did not render ineffective assistance when the record as a whole revealed that appellate counsel raised several important claims on direct appeal, including challenging the sufficiency of the evidence, and finding counsel's failure to include the jury instruction claim may have been a strategic decision to "winnow out the weaker arguments," given the lack of law supporting Reutter's jury instruction claim).

## VIII. Certificate of Appealability

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly without merit, Petitioner cannot satisfy the *Slack* test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2254 Proceedings, Rule 11(a), 28 U.S.C. foll. §2254: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

<u>IX. Recommendation</u>

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied and no certificate of appealability issue.

SIGNED this <u>31st</u> day of December, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

cc: James C. Marshall, <u>Pro</u> <u>Se</u>
    DC# 189703
    Okeechobee Correctional Institution
    3420 N.E. 168th Street
    Okeechobee, FL 34972-4824

    Timothy R.M. Thomas, AAG
    Department of Legal Affairs
    444 Brickell Avenue
    Suite 650
    Miami, FL 33131