UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20557-CIV-SEITZ/WHITE

JAMES C. MARSHALL,

      Petitioner,

v.

KENNETH S. TUCKER,

      Respondent.
_____/

### ORDER AFFIRMING REPORT AND RECOMMENDATIONS IN PART, RE-REFERRING GROUND 7 TO MAGISTRATE FOR SUPPLEMENTAL REPORT, AND DENYING CERTIFICATE OF APPEALABILITY

THIS MATTER came before the Court upon Magistrate Judge Patrick A. White's Report and Recommendations ("the Report"). [DE 21]. Judge White recommends denying the Petition for Habeas Corpus Relief and a Certificate of Appealability. Having carefully considered, *de novo*, the comprehensive Report [DE 21], Petitioner's objections [DE 24] and his supplemental briefing on *Haygood v. State*, 109 So. 3d 735 (Fla. 2013) [DE 34], and the record, Judge White's factual findings are not clearly erroneous and his legal conclusions are consistent with the proper application of the law to those facts. The Report is affirmed and adopted in part.[1] Claim 7 is re-referred to Judge White for a Supplemental Report in light of the *Haygood* decision. The Court will deny Claims 1 – 6 of the petition and deny a certificate of appealability as to those six claims for the reasons discussed below.

### I. BACKGROUND

On November 15, 2006, a jury found Petitioner James C. Marshall ("Marshall") guilty of second-degree murder for the 2004 killing by strangulation of Marie Saunders. At trial, Marshall's counsel conceded that Marshall killed Marie Saunders by strangling her, but argued that Marshall should only be found guilty of manslaughter because the State failed to prove that Marshall acted with malice, ill will, or

---

[1] With respect to the Report's conclusion that Marshall qualified as a habitual offender under Florida sentencing law, that factual finding is unnecessary and is not adopted. See discussion in Section II(d) *infra*.

1

spite. On December 26, 2006, the court sentenced Marshall as a habitual offender to a term of imprisonment of forty-five years.

## II. GROUNDS 1 – 6 ARE DENIED, GROUND 7 IS REFERRED BACK TO THE MAGISTRATE FOR A SUPPLEMENTAL REPORT

### a. Ground 1 – Sufficiency of the Evidence

Marshall's first objection is that the Report incorrectly concludes that the record contains sufficient evidence that Marshall acted as a person of "ordinary judgment" when he killed Marie Saunders. Marshall's objection proceeds from an incorrect premise. The elements of second-degree murder are as follows: (1) the victim is dead, (2) the defendant's conduct caused the killing, and (3) the killing was unlawful and accomplished by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. Fla. Stat. § 782.02(2). "Ordinary judgment" is not an element of the crime. It is the standard the jury uses to determine if the killing demonstrates a depraved mind. *See, e.g., State v. Yaqubie*, 51 So. 3d 474, 476 (Fla. 3d DCA 2010) ("[A]n act is imminently dangerous to another and demonstrating a depraved mind if it is one that . . . [a] person of *ordinary judgment* would know is reasonably certain to kill or do serious bodily injury to another . . .") (internal citations omitted) (emphasis added). Judge White's thorough factual recitation explains why the facts of the killing reflect a depraved mind and the evidence adduced at trial sufficiently supports Marshall's conviction for second-degree murder. Marshall is not entitled to habeas relief on this ground.

### b. Ground 2 – Faretta Hearing

Marshall's second objection is to the Report's conclusion that Marshall did not unequivocally invoke his right to self-representation. Marshall raised self-representation for the first time on November 15, 2006, in a *pro se* pleading styled a "Motion for Certificate of Conflict of Interest and to Dismiss Court Appointed Counsel." [DE 16 – 1, pp. 128 – 35]. In the motion, Marshall voiced his displeasure with his appointed counsel and concluded by asking the court to allow him to represent himself. The court heard the motion the same day, which was the second day of the trial and just before the State made its opening statement. The trial court engaged in a colloquy with Marshall regarding his motion. However, the

colloquy addressed the issue of Marshall obtaining new counsel, not proceeding *pro se*.[2] When the trial judge asked Marshall about his motion to relieve his appointed counsel, Marshall never said he wanted to proceed *pro se*. A request to proceed *pro se* is only valid when it is unambiguous, such that "no reasonable person can say the request was not made." *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986). The fact that Marshall remained silent while on the precipice of his trial for second degree murder with opening statements imminent supports the reasonable conclusion that Marshall equivocated in his *pro se* request. As such, the court was not obligated to conduct a *Faretta* inquiry and no habeas relief is warranted on this ground.

   c. *Ground 3 – Insanity Defense*

With respect to Ground 3, Marshall claims the Report (i) mischaracterizes his claim as seeking multiple mental health experts when in fact the claim only concerned receiving competent assistance, and (ii) construes his third ground as seeking habeas relief based on a voluntary intoxication defense, not an insanity defense. Marshall's objection does not have merit. The Report's exclusive focus is whether Marshall received constitutionally sufficient expert assistance to advance his insanity defense. The record shows that Marshall was examined by Dr. Merry Haber, a mental health expert who specifically investigated whether Marshall suffered from cocaine psychosis at the time of the offense.[3] Marshall claims Dr. Haber's exam was insufficient because it occurred two years after his arrest and the exam was interrupted. The purpose of habeas review under § 2254 is to ensure that state prisoners received adequate constitutional due process, and here, due process requires only that Marshall be afforded access to a mental health expert who will conduct an examination and assist in the evaluation, preparation, and presentation of the defense. *See Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). Dr. Haber's exam enabled Marshall's counsel to conclude an insanity defense was not Marshall's best option. *See* DE 16-3, p. 17 –

---

[2] In relevant part, the Court stated: You feel [your counsel's unwillingness to advance a cocaine psychosis defense] is why you need new counsel?
The Defendant: Yes.
(Trial Transcript, [DE 16-5], p. 7, 9:11)

[3] This fact is established by Defense Counsel's Notice of Intent to Rely on the Defense of Insanity [DE 16-1, p. 39] wherein counsel preserved Marshall's right to call Dr. Haber as witness to testify to possible "cocaine psychosis at the time of the alleged commission of the offense."

3

18. Therefore, pursuant to *Ake*, Marshall received expert assistance sufficient for due process purposes and, as such, he is not entitled to habeas relief on Ground 3.

   d. *Ground 4 – Unlawful Sentence*

Marshall objects to the Report's conclusion he qualified as a habitual felony offender for sentencing. To the extent that Judge White concludes that Marshall was correctly sentenced as a habitual offender, the finding is unnecessary and is not adopted. A federal court's habeas review of a state sentence is limited only to ensuring that a prisoner received constitutional due process. So long as the claim does not credibly implicate constitutional due process, whether a state followed its own sentencing procedures is beyond the scope of federal habeas review. *Redman v. Dugger*, 866 F.2d 387 (11th Cir. 1989). Here, Judge White notes that Marshall's forty-five year sentence did not exceed the statutory maximum of life and that "nothing in the record [indicates] that fundamental due process was denied in Marshall's case." [DE 21, p. 27]. The record supports this conclusion, and as such, Marshall is not entitled to habeas relief on Ground 4.

   e. *Ground 5 – Ineffective Assistance of Trial Counsel for Failure to Object to Incorrect Manslaughter Instruction*

In Ground 5, Marshall alleges he received ineffective assistance of counsel because his attorney failed to object to a standard manslaughter instruction the Florida Supreme Court later determined was incorrect. *See State v. Montgomery*, 39 So. 3d 252 (Fla. 2010). However, as Judge White notes, the Florida Supreme Court's *Montgomery* decision did not invalidate the manslaughter by act instruction until years after Marshall's trial. It is well-settled that an attorney does not act ineffectively where he fails to anticipate changes in the law. *Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997). Therefore, Marshall's counsel's failure to object does not constitute ineffective assistance of counsel.[4] However,

---

[4] With leave of the Court [DE 32], Marshall filed supplemental briefing [DE 34] on the effect of the Florida Supreme Court's recent decision in *Haygood v. State*, 109 So. 3d 735 (Fla. 2013) which issued after Judge White filed the Report. *Haygood* held that a manslaughter by culpable negligence instruction given with the old, improper manslaughter by act instruction would not cure the use of the improper instruction. However, *Haygood* does not provide any grounds for relief because Marshall's claims are for ineffective assistance of trial counsel. As discussed above, Marshall's trial counsel cannot be said to be ineffective on the basis of failing to anticipate the ruling of the *Haygood* decision. As is discussed below, the Court will re-refer the matter to Judge White for a report on how *Haygood* affects Claim 7, ineffective assistance of appellate counsel.

4

Marshall's objection is that jury instructions are not changes to existing law, but merely changes in *explanations* of the law, and, as such, he received ineffective assistance of counsel. Assuming without deciding that Marshall's argument that a change in instructions does not constitute a change in the law is correct, Marshall's counsel still could not be deemed ineffective. Standard jury instructions are presumed correct. *Stephens v. State*, 787 So. 2d 747, 755 (Fla. 2001). Counsel's non-objection to an instruction which had a legal presumption of correctness could not be said to fall below "prevailing professional norms," and as such, was not deficient under the *Strickland* standard. *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

Marshall's second objection is that his counsel was ineffective for failing to object to the jurors being given an incorrect written copy of the jury instructions.[5] The factual basis of the objection is unsupported by the record. First, it is unknown whether the court gave a copy of the jury instructions to the jurors. The parties did not discuss whether the court would give a copy to the jury at the pre-trial conference or charge conference, and the trial judge did not make reference to the jurors having a copy of the instructions during the court's instruction of the jurors. Second, even assuming the jurors had a copy of the instructions, it is unclear whether the instructions were incorrect. In support of the Petition, Marshall introduced a copy of the instructions that he claims was distributed to the jury. [DE 20, p. 20] It is noted that these instructions are incorrect; the word "or" does not separate instruction 2(a), the act instruction, from instruction 2(b), the culpable negligence instruction. *See* Fla. Std. Jury Instr. (Crim) 7.7 (2006). However, in the copy of the jury instructions filed in the trial court's record, the word "or" is handwritten between instruction 2(a) and 2(b).[6] [DE 16-1, p. 150]. Marshall bears the burden of establishing the factual predicate of his ineffective assistance of counsel claim. *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and

---

[5] Marshall did not explicitly differentiate between errors in the verbal and written instructions in his petition and did so for the first time within a footnote to his reply to Respondent's opposition. [*See* DE 19, p. 28, n.2]. Neither the Respondent's opposition [DE 14] nor the Report addresses this argument.

[6] As Marshall notes in his objection, when the court improperly instructed the jury using the conjunctive "and" that mistake was immediately noted by the prosecutor and the court read the correct instruction. (*See* Trial Transcript [DE 16-5], p. 179, 12:23)

5

he must prove all facts necessary to show a constitutional violation.") (internal citation omitted). Here, because it is unclear from the record whether the basic facts of Marshall's ineffective assistance counsel claim are true, the claim must fail.

*f. Ground 6 – Ineffective Assistance of Trial Counsel for Failure to Present Insanity Defense*

Marshall objects to the Magistrate's conclusions that (i) counsel was not ineffective in not pursuing an insanity defense at trial, and (ii) counsel was not ineffective in investigating the insanity defense.[7] As to the first, whether counsel actually used an insanity defense at trial is a strategic calculation, one that under the circumstances presented here will not be second guessed. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.") As to Marshall's objection to Judge White's second conclusion on Ground 6, that counsel was not ineffective in his investigation of the insanity, the Report sets out the complete scope of counsel's investigation into a possible insanity defense and the actual steps need not be reiterated. *See* DE 21, p. 34 – 35. Marshall also objects to his counsel's alleged lack of diligence in undertaking his investigation into the insanity defense, claiming counsel only started his investigation after the state's attorney moved to compel a timely notice of intent to file a notice of reliance on an insanity defense. Counsel's motives for conducting his investigation are irrelevant. All *Strickland* requires is "reasonableness under prevailing

---

[7] Marshall also objects to the factual basis of the Magistrate's legal conclusions. Marshall claims (i) that he never told his counsel that he was not under the influence of drugs the night of the offense, and (ii) that he never told his counsel he did not want to pursue a cocaine psychosis defense. [DE 24, p. 16 – 17] These claims from Marshall's objections conflict with Marshall's earlier representations from his *pro se* Amended Motion for Postconviction Relief under Rule 3.850 where he states: (1) "Mr. Marshall further told counsel that he had abused many drugs in the past, but was not high at the time he was at his girlfriend's residence..." [DE 15 – 1, p.15] and (2) "Though the state suggested a possible cocaine psychosis defense, etc., such was not proper nor a defense which Defendant wanted." *Id.* at p. 16. Marshall also claims the pre-trial mental health evaluation he received before trial only concerned his fitness to stand trial. This assertion is contradicted by the Notice of Intent to Rely on the Defense of Insanity [DE 16-1, p. 39] his counsel filed which stated that the basis of the insanity defense was "cocaine psychosis at the time of the alleged commission of the offense" and that the defense would be supported by the testimony of Dr. Merry Haber, the defense expert who examined him. Because Marshall's objections as to the factual basis of the Magistrate's conclusion that his counsel was not ineffective are themselves unsupported by credible evidence, they are unconvincing.

professional norms." *Strickland*, 466 U.S. at 688. Here, by completely investigating a facially viable insanity defense, counsel met the *Strickland* standard.

    g. *Ground 7 – Ineffective Assistance of Appellate Counsel*

The basis of Marshall's seventh claim is that his appellate counsel was ineffective for failing to file supplemental briefing based on the First District Court of Appeal's ("DCA") ruling in *Montgomery v. State*, 70 So. 3d 603 (Fla. 1st DCA 2009), where the First DCA invalidated the same pattern manslaughter by act instruction used at Marshall's trial. The Report concludes that Marshall is not entitled to habeas relief because he did not suffer prejudice. According to the Report, even if his counsel had raised the issue, the Third DCA, diverging from the First DCA's opinion in *Montgomery*, would have ruled that the use of the pattern manslaughter by act instruction did not constitute fundamental error. *See, e.g., Valdes-Pino v. State*, 23 So. 3d 871, 872 (Fla. 3d DCA 2009). The Report also points out that even after the Florida Supreme Court affirmed the First DCA's *Montgomery* decision and held that the use of the pattern manslaughter by act instruction constituted fundamental error, intermediate courts of appeal found no fundamental error where the court gave a culpable negligence instruction along with the erroneous pattern manslaughter by act instruction. *See Salonko v. State*, 42 So. 3d 801 (Fla. 1st DCA 2010); *Cubelo v. State*, 41 So. 3d 263 (Fla. 3d DCA 2010). This is precisely how the court instructed the jury at Marshall's trial.

Since the Report issued however, the Florida Supreme Court decided in *Haygood v. State*, 109 So. 3d 735 (Fla. 2013) that these intermediate courts were wrong and that structural error persists even when the incorrect pattern manslaughter by act instruction was given with the pattern manslaughter by culpable negligence instruction. Had Marshall's appellate counsel preserved the issue for appeal once the Third DCA held fundamental error did not occur, Marshall may have sought discretionary review by the Florida Supreme Court.[8] In light of *Haygood*, it is less clear whether Marshall suffered prejudice by his appellate counsel's admitted failure to raise the use of the defective manslaughter by act instruction on

---

[8] Marshall filed an affidavit from his appellate counsel where counsel states he should have raised the defective manslaughter instruction issue on appeal. [DE 20, p. 49].

7

appeal. Accordingly, the Court will re-refer the matter to Judge White for a Supplemental Report on what effect, if any, *Haygood* has on Marshall's claim of ineffective assistance of appellate counsel.

### III. A CERTIFICATE OF APPEALABILITY IS DENIED AS TO GROUNDS 1 – 6

The Court will deny the issuance of a certificate of appealability as to Claims 1 - 6. In order to obtain a certificate of appealability, Petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is satisfied if Petitioner demonstrates "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Jones v. Secretary*, 607 F.3d 1346, 1349 (11th Cir. 2010) (quotation omitted). Here, the Court must deny the certificate of appealability as Petitioner has not met this standard as to Claims 1 through 6. The Court will address a certificate of appealability as to Claim 7 following receipt and review of the supplemental report.

### IV. CONCLUSION

It is therefore,

ORDERED THAT

(1) The Court AFFIRMS and ADOPTS, IN PART, Judge White's findings of fact and recommendation to deny claims 1- 6 as set forth above. [DE 121].

(2) For the reasons set forth above, Petitioner's objections on Grounds 1 – 6 are OVERRULED [DE 24] and all claims in the Habeas Petition [DE 1] are DENIED except Ground 7.

(3) Ground 7 is re-referred to Judge White for a supplemental report as set forth above.

(4) A certificate of appealability is DENIED as to Claims 1 through 6.

DONE and ORDERED in Miami, Florida, this 5th day of December, 2013.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Honorable Patrick A. White
*Pro Se* Petitioner
Counsel of Record